## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS A. SIMONIAN, | ] | |
| | ] | |
| Relator, | ] | 1:10-cv-01263 |
| v. | ] | |
| | ] | Judge John F. Grady |
| EDGECRAFT, CORP. | ] | |
| | ] | **Jury Demand** |
| Defendant. | ] | |

### Relator's Combined Response In Opposition
### to EdgeCraft 's Rule 12(b)(1), 9(b), and 12(b)(6) Motions to Dismiss

Thomas A. Simonian, as *qui tam* relator on behalf of the United States of America

("Relator"), respectfully submits this Response to the motions to dismiss filed by EdgeCraft

Corp., ("EdgeCraft"). As set forth below, the Complaint should not be dismissed because: (a)

Congress granted the Relator standing to file this lawsuit *on behalf of the United States*, the

United States has suffered an injury from EdgeCraft 's false marking, and the Relator has

sufficiently pled its standing here; (b) the Relator has complied with his pleading obligations

under Rule 9(b); and (c) false marking includes the failure to remove an expired patent from a

product.

### I.Background

A patent is a contract between the public and an inventor. *Grant v. Raymond*, 31 U.S. 218,

242 (1832). This contract gives monopoly-like rights to the inventor for a limited time. *Scott*

*Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249, 255 (1945) ("By the patent laws, Congress has

given to the inventor the opportunity to secure the material rewards for his invention for a limited

time, on condition that ... upon the expiration of the patent the public be left free to use the

invention"). When those patent rights expire, the former-patentee has an obligation not to mark a

product with that patent, because doing so provides the public with false information concerning "the status of intellectual property embodied in an article of manufacture or design." *Clontech Laboratories, Inc. v. Invitrogen Corporation*, 406 F.3d 1347, 1356 (Fed. Cir. 2005). Put another way, Congress intended that the public be spared the search costs of determining the status of such intellectual property. *Id.*

Congress enacted 35 U.S.C. §292 with the purpose of preventing persons (and companies like EdgeCraft ) from telling the world that a product is covered by a particular patent when it is not, in order to protect consumers, competition, and the integrity of the patent system. *The Forest Group, Inc. v. Bon Tool Company*, 590 F.3d 1295, 1303-4 (Fed. Cir. 2009). To discourage false marking, Congress provides for a fine of up to "$500 per offense" and offers citizens a reward for collecting that fine on the government's behalf. The statutory language that governs EdgeCraft 's conduct here is as follows:

(a)   ... Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any work or numbering importing that the same is patented, for the purpose of deceiving the public ... shall be fined not more than $500 for every such offense.

(b)   Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States.

35 U.S.C. §292.

Two recent Federal Circuit cases have increased the public's understanding of the statute and the financial rewards available to collect fines on behalf of the government. In *The Forest Group*, the Federal Circuit explained that the phrase "$500 for every such offense" meant that a false marker should be penalized up to $500 for each article on which it placed a false marking. 590 F.3d at 1303-4. In doing so, the Court specifically rejected the argument that such an

2

interpretation would lead to the *unwarranted* creation of a "cottage industry" of citizen bounty-hunters who would be incentivized to pursue such claims on behalf of the government. To the contrary, the Court stated that such bounty-hunting was in fact what Congress had intended by establishing the bounty in the first place:

> **Rather than discourage such activities, the false marking statute explicitly permits *qui tam* actions. By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking.**

*Id.* (emphasis added). Indeed, the Federal Circuit stated that its understanding of this incentive-based system was one of the bases that supported its holding that the fine should be assessed "per article" marked:

> **The fact that the statute provides for *qui tam* actions further supports the per article construction. Penalizing false marking on a per decision basis would not provide sufficient financial motivation for plaintiffs – who would share in the penalty – to bring suit.**

590 F.3d at 1304 (emphasis added). While competitors have their own financial motivation to police false patent markers (and Section 43(a) of the Lanham Act to use as leverage), citizen bounty-hunters need a meaningful financial incentive to proceed with such suits on behalf of the government given the expense involved: "**It seems unlikely that any *qui tam* plaintiffs would incur the enormous expense of patent litigation in order to split a $500 fine with the government.**" *Id.* (emphasis added).

*The Forest Group* built upon the Federal Circuit's earlier explanation in *Clontech Labs* of the requirements necessary for a plaintiff to obtain the civil fine. There, the Federal Circuit explained several features of the statute, including: (a) what it means to falsely mark an unpatented article; (b) how the public and competitors are injured by mis-marking; and (c) the

3

level of intent required to show that the defendant had mis-marked a product "for the purpose of deceiving the public." *Clontech Labs*, 406 F.3d at 1352 and 1356-7.

## II. Argument: EdgeCraft 's Motions to Dismiss Should Be Denied

**A.     The Relator Has Standing To Bring Suit On Behalf of the Government.**

As a general matter, a defendant can make two types of challenges to standing. Either a defendant can assert that, facially, the plaintiff has not sufficiently pled standing, or a defendant can submit evidence that calls into question the accuracy of the plaintiff's facially-sound standing allegations. *Apex Digital, Inc. v. Sears, Roebuck & Company*, 572 F.3d 440, 443 (7th Cir. 2009) (explaining "the critical difference between facial and factual challenges to jurisdiction"). Here, EdgeCraft makes a facial (rather than a factual) challenge: rather than submitting evidence to the Court that would demonstrate that the Relator's allegations are false, EdgeCraft argues that the Relator has not sufficiently alleged standing. In such a facial challenge, "the court does not look beyond the allegations of the complaint, which are taken as true for purposes of the motion." *Id.* at 444. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support a claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). As shown below, the Relator has satisfied its burden at the pleading stage, and EdgeCraft 's 12(b)(1) motion to dismiss should be denied.

EdgeCraft attempts to argue that the Relator is suing only as a member of the public, to redress some "conjectural" injury to himself. To do so, EdgeCraft simply ignores the fact that, as a *qui tam* relator, Mr. Simonian takes a partial assignment of the United States' claim. *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000). As such,

4

the Relator has standing based on the United States' injury. *Id.* ("adequate basis for the relator's suit for his bounty is to be found in the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor"); *Juniper Networks v. Shipley*, 2010 WL 986809, *6 (N.D. Cal. March 17, 2010) ("in *qui tam* actions, the injury need not be suffered by the relator; injury in fact to the United States is sufficient;" relator had standing to bring 292 claim). [1]

There are two questions, then. The first question is whether the United States has standing to pursue a claim against a company that abuses the patent rights the United States granted to it – as part of the contract between the public and the inventor – and injures the public by providing misleading commercial information. The answer to that question, provided by both the Federal Circuit and the United States itself, is yes. *The Forest Group*, 590 F.3d at 1303 (explaining that the public is injured when it must expend search costs to determine the status of intellectual property); *Clontech Labs*, 406 F.3d at 1356-7 (same); U.S. Brief in *Stauffer* (**Exhibit A** hereto).

The second question is whether there is any jurisdictional problem caused by the relator's pursuit of the United States' claims based on this injury to the public. The answer to that question is no. As Judge Shadur observed, if the Federal Circuit thought there was a jurisdictional problem, it would have raised it on its own, and did not do so. *Zojo Solutions*, 2010 WL 1912650, *2 ("it must be remembered that if the Federal Circuit had perceived that the statute posed a subject matter jurisdictional problem, it would have been obligated to raise and address that issue *sua sponte*"). Indeed, during briefing in *The Forest Group*, the appellee raised the issue of a *qui tam* relator's standing to bring a claim in the absence of a direct personal injury:

---

[1] All unpublished decisions are attached as **"Group Exhibit 1"**

> A rule that a *qui tam* plaintiff is entitled to recover a per article penalty of up to $500 could make Section 292 a potential windfall for enterprising patent attorneys and would-be litigants. The statute permits "any person" to sue ... Because there is no standing requirement, a *qui tam* plaintiff can sue for false marking even if he did not suffer a competitive disadvantage and even if he was not a consumer of the falsely marked article.

(Appellee's Brief in *The Forest Group*, 2009 WL 870156 (Fed. Cir. 2009), p. 13; **Exhibit B** hereto). The Federal Circuit had two possible responses to this argument: (a) it could have stated that such a plaintiff would not have standing, and thus there was no need to fear claims from "enterprising litigants;" or (b) it could have stated that the statute in fact encouraged enterprising litigants to bring such claims despite the absence of direct injury. The Federal Circuit emphatically chose the latter course. *The Forest Group*, 590 F.3d at 1303-04 ("By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking"); *Zojo Solutions*, 2010 WL 1912650, *2 ("*Forest Group* has confronted – and [has] rejected – the notion that private plaintiffs such as Zojo here were not intended to be granted authority to bring this type of action.").

EdgeCraft attempts to subvert this argument by citing extensively to *Stauffer*. There are three problems with this. First, EdgeCraft makes a facial challenge to standing not a factual one, and in *Stauffer* the court (615 F.Supp.2d at 255) found a lack of standing based on a factual challenge: the <u>affidavits</u> and <u>exhibits</u> submitted by the defendant in that case demonstrated that Brooks Brothers had no intent to deceive.[2] *Cf., Apex Digital, Inc. v. Sears, Roebuck & Company,*

---

[2]Worse, in trying to rebut the factual challenge to his standing, Mr. Stauffer insulted the court's intelligence by arguing that he was "injured" by the mis-marking because he "found himself questioning his own professional competence, inasmuch as he was sure that Brooks Brothers could not have committed such a brazen section 292 violation." 615 F.Supp.2d at 255 fn. 7.

6

572 F.3d 440, 443 (7th Cir. 2009) (explaining "the critical difference between facial and factual challenges to jurisdiction" and dismissing the case based on evidence – a letter showing that the plaintiff had, prior to the lawsuit, assigned its claim to a third party and thus had no standing to sue). Second, even if *Stauffer* were construed to apply to a facial challenge, *Stauffer* predated *The Forest Group*, which clearly reaffirmed the existence of the public injury that Congress was seeking to redress with Section 292 suits. Having taken the strong position it did in *The Forest Group* in support for a "cottage industry" of false-marking bounty hunters, and having had the opportunity to address any subject matter jurisdiction problems with *qui tam* claims for false marking, it is difficult to imagine that the Federal Circuit would abort *The Forest Group* and find that *qui tam* relators have no standing.[3] *Zojo Solutions*, 2010 WL 1912650, *2. Third, if *Stauffer* can be read as making a broad statement about Constitutional standing law, that broad reading is simply incorrect, as the United States itself has now argued to the Federal Circuit. **(Exhibit A )**. As the United States summarized, "the district court imposed an injury requirement on Stauffer as a *qui tam* plaintiff that finds no basis in many years of actual practice, cannot be squared with the Supreme Court's reasoning in upholding Article III *qui tam* standing under the False Claims Act in *Vermont* Agency, and would undermine the premise for standing by actions in court by the United States itself under numerous parts of the U.S. Code. (U.S. Brief at 12).

As the Federal Circuit noted, "[i]n each instance where it is represented that an article is

---

[3]Given that *Stauffer* was decided before the Federal Circuit's ruling in *The Forest Group*, there is little reason for this Court to view *Stauffer* as persuasive on the jurisdictional issue now. Of course, the Relator does not agree that *Stauffer* ever was persuasive. *See, Harrington v. Ciba Vision Corporation*, 08 C 251, Tr. at 5-6, (W.D.N.C. May 22, 2009) (finding standing for the Section 292 relator after considering – and rejecting – the *Stauffer* opinion, even before *The Forest Group* ruling) **(Exhibit C** hereto).

patented, a member of the public desiring to participate in the market for the marked article must incur the cost of determining whether the involved patents are valid and enforceable." *Clontech Labs*, 406 F.3d at 1356-57, fn. 6. This is the injury that the Relator brings his claim to redress, and it is sufficient to defeat EdgeCraft 's motion to dismiss. *Simonian v. Merck*, Mem. Op., pp. 4-5 (N.D. Ill. June 1, 2010) (denying motion to dismiss based on Article III challenge), **Exhibit D** hereto; *Pequignot v. Solo Cup Company*, 640 F.Supp.2d 714, 720-1 (E.D. Va. 2009) (same).

In sum, as *qui tam* relator and assignee of the United States' claims for this purpose, Mr. Simonian has Article III standing to pursue the injury EdgeCraft caused the public by falsely marking its products in violation of Section 292, in breach of its patent contract.

**B.     The Relator has pled with the particularity and plausibility required by Rule 9(b).**

The Relator has alleged all that it needs to allege in order to state a claim. The Relator alleges that (a) this is a *qui tam* action under Section 292 of the Patent Act; (b) the particular false patenting at issue concerns three patents (identified by patent number) that EdgeCraft marked on the packaging of its knife sharpening products after they had expired; (c) EdgeCraft is a sophisticated company that has experience in the patent world; (d) EdgeCraft knew or should have known that the referenced patents expired; (e) EdgeCraft intentionally marked its products with the expired patents for the purposes of hindering competition and deceiving the public; (f) EdgeCraft has wrongfully and illegally advertised patent rights that it does not possess and, as a result, has benefitted commercially and financially by maintaining false statements of patent rights; and (g) each expired patent that is marked on a product contributes to causing harm to the United States and the general public. (Complaint, **Exhibit E** hereto, ¶¶ 1, 2, 10-12, 16-69).

EdgeCraft argues that these allegations are insufficient because the Relator has failed to meet his burden under the heightened pleading requirements of Rule 9(b). EdgeCraft is wrong:

**1.    Rule 9(b) specifically provides that "intent" need NOT be alleged with particularity**

Rule 9(b) specifically provides that while a plaintiff must "state with particularity" the "circumstances constituting fraud," there are certain things that "may be alleged generally:" "[m]alice, intent, knowledge, and other conditions of a person's mind." Fed. R. Civ. P. 9(b). This makes sense, because things such as knowledge and intent are "uniquely within another party's control," and thus may be pled on information and belief. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009). Accordingly, the Relator's general allegations, on information and belief, that EdgeCraft acted with an intent to deceive the public when it marked its products with four expired patents is sufficient pursuant to the explicit terms of Rule 9(b)'s pleading requirements. [4]

**2.    The Relator has alleged the requisite "who, what, when, where, and how" of Rule 9(b) and has pled the required elements of a false marking claim.**

Because Rule 9(b) is clear, EdgeCraft attempts to jumble various requirements together in an effort to argue that the Relator has somehow not complied with its pleading obligations. Under the case law, the Relator must plead – and prove by a preponderance of the evidence – (a) that EdgeCraft's products are falsely marked, and (b) that EdgeCraft lacked a reasonable belief that its products were properly marked. *Clontech*, 406 F.3d at 1352-53. For Rule 9(b) purposes, the

---

[4] Because the Relator has complied with Rule 9(b), it need not engage in an academic debate about whether 9(b) applies in Section 292 cases. *See Astec America v. Power-One, Inc.*, 2008 U.S. Dist. LEXIS 30365 *32-34 (E.D.Tex. April 11, 2008) (Rule 9(b) does not apply to false marking claims under Section 292).

Relator must allege with particularity the "circumstances constituting fraud." Contrary to

EdgeCraft 's suggestion, the reference to "circumstances" does not require the Relator to plead

"intent" with particularity; rather "the cases and commentary agree that the reference to

'circumstances' in the rule requires 'the plaintiff to state the identity of the person who made the

misrepresentation, the time, place, and content, of the misrepresentation, and the method by which

the misrepresentation was communicated to the plaintiff.'" *Vicom, Inc. v. Harbridge Merchant

Services, Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). Thus, with regard to the misrepresentation (here,

the false marking), the plaintiff must allege "the who, what, when, where, and how: the first

paragraph of any newspaper story." *United States ex rel. Lusby v. Rolls-Royce Corporation*, 570

F.3d 849, 853 (7th Cir. 2009). The Relator has met all of the foregoing requirements.

In *Lusby*, Judge Easterbrook stated the question nicely: has the *qui tam* defendant been

"told exactly what the fraud entails"? The answer here is yes. Despite EdgeCraft 's assertions to

the contrary, the Relator has told EdgeCraft : who committed false marking (EdgeCraft [5] as

depicted on the photos in paragraphs 7-8 of the complaint); what products are falsely marked (the

packaging and products of the type pictured in the above mentioned photos) and what patents in

particular were falsely marked on the products (paragraph 2 of the Complaint); when the false

marking events occurred (following the expiration of the patents identified on the products as

pictured) where the false marking occurred (as also identified in the photographs);] and how the

---

[5]The identity of the particular individuals at EdgeCraft involved in the false marking will
be learned during the discovery process. *United States ex rel. Kennedy v. Aventis
Pharmaceuticals*, 512 F.Supp.2d 1158, 1167 (N.D.Ill. 2007) ("It is well established [that] the
requirements of Rule 9(b) are relaxed when the plaintiff lacks access to all facts necessary to
detail his claim. Such a situation is more likely to arise when, as in this case, the relators' claims
are based on fraud allegedly committed against third parties").

false marking was carried out, namely placing the expired patent numbers on the packaging and products as pictured. *See Lusby*, 570 F.3d at 853-54 (reciting the relator's allegations and noting that: (i) a relator cannot be expected to know – and therefore allege – all the specifics in a given circumstance, and (ii) "much knowledge is inferential.")

"The question of whether conduct rises to the level of statutory deception is a question of fact." *Clontech Labs*, 406 F.3d at 1353. Having provided the "who, what, where, when, and how" information required by *Lusby* and having alleged that EdgeCraft is a sophisticated company that knew or should have known when its patents expired, the Relator's allegation that EdgeCraft did so with the requisite intent to deceive is plausible. *See, Lusby*, 570 F.3d at 854 ("We don't think it is essential for a relator to produce the invoices (and accompanying presentations) at the outset of the suit. True, it is essential to show a false statement. But much knowledge is inferential ... and the inference that Lusby proposes is a plausible one." * * * the Relator's pleading need <u>not</u> "exclude all possibility of honesty in order to give the particulars of fraud").

Here, the Relator alleges that EdgeCraft – a sophisticated company that has experience with patents – marked its product with expired patents. Because EdgeCraft is "presumed to know the law," it is therefore reasonable for the Relator (and this Court) to infer that EdgeCraft knew or should have known that the patents were expired, that such conduct was prohibited by law, and that EdgeCraft intended to violate the law and deceive the public. *See, Novo Nordisk Pharmeceuticals, Inc. v. Bio-Technology General Corp.*, 424 F.3d 1347, 1361-2 (Fed. Cir. 2001) ("because knowledge of the law is chargeable to the inventor," and "inventors represented by counsel are presumed to know the law," the district court's "inference of deceptive intent is not

11

clearly erroneous ... the district court correctly concluded that Novo knew or should have known that the PTO and the Board would have considered the information ... important"); *Solo Cup*, 646 F.Supp.2d at 797 ("under *Clontech*, a false marking with knowledge of falsity creates a rebuttable *presumption* of intent to deceive. ... Whether evidence suffices to rebut the presumption turns on a fact-specific examination of the defendant's conduct").

Having alleged a plausible inference and having answered the five newspaper questions in accordance with the Seventh Circuit's approach in *Lusby*, EdgeCraft nonetheless claims that this court should follow the district court of Delaware (in *Brinkmeier*) and dismiss the Relator's complaint. There are two major problems with this. First, *Lusby* controls in the Northern District of Illinois, not *Brinkmeier*. Second, the *Brinkmeier* standard is inconsistent with *Solo Cup*, which properly derives its standard from *Clontech Labs*. EdgeCraft 's motion to dismiss should be denied.

**C.     Marking a product with an expired patent violates Section 292.**

EdgeCraft argues that the Relator 's complaint should be dismissed because "expired patents fall outside the scope of 'unpatented articles' as required in §292." (Mem. at 9) EdgeCraft 's position is directly contrary to the interpretation of the false marking statute by the Federal Circuit and numerous district courts.

According to the Federal Circuit, Section 292 requires that the article in question must be "**covered by** at least one claim **of each patent** with which the article is marked." *Clontech Labs*, 406 F.3d at 1352 (emphasis added). When a patent expires, its claims no longer cover the article it is attached to. As a result, marking a product with an expired patent violates Section 292.

Judge Shadur recently followed Federal Circuit precedent and rejected the argument that a

12

Section 292 violation cannot be based on an expired patent. In *Zojo Solutions, Inc. v. The Stanley Works*, 2010 WL 1912650, *1-2 (N.D. Ill. May 12, 2010), Judge Shadur quoted extensively from *The Forest Group* and concluded that "the perceived evils [of false marking set out by the Federal Circuit in *The Forest Group*] are present when a patentee continues to affix the 'patent' designation to an article even after it has entered the public domain by reason of the patent's expiration." Other courts have reached the same conclusion. *Brinkmeier v. Graco Children's Products, Inc.*, 2010 WL 545896, *3 (D. Del. February 16, 2010; cited by defendant) ("Under *Clontech*, it appears that a product marked with expired patents and valid patents would be an unpatented article for purposes of §292"); *Pequignot v. Solo Cup*, 540 F.Supp.2d 649, 652 (E.D.Va. 2008) ("An article that was once protected by a now-expired patent is no different than an article that has never received protection from a patent. Both are in the public domain"); *DP Wagner Manufacturing, Inc. v. Pro Patch Systems, Inc.*, 434 F.Supp.2d 445, 452, fn. 3 (S.D. Tex. 2006) ("It is self evident that once a patent has expired it provides no protection for the article that it described")..

EdgeCraft relies heavily on the Federal Circuit's opinion in *Arcadia Machine & Tool, Inc. v. Sturm, Ruger & Co.* to supports its position. 786 F.2d 1142 (Fed. Cir. 1986). However, that case is inapplicable because it concerned the failure to prove a claim for false marking based on lack of evidence of intent. *See D.P. Wagner v. Pro Patch Systems*, 434 F.Supp.2d 445, 452, fn. 3 (S.D. Tx. 2006)("[paramount is the [district] court's finding and conclusion that Arcadia totally failed, after at least nine months of discovery, to produce any evidence of intent to deceive the public"). Moreover, the district court opinions cited by EdgeCraft in support are not persuasive as two of them, the lower court's opinion in *Arcadia*, 227 U.S.P.Q. 655 (C.D. Cal. 1985), and *Wilson v.*

*Singer Mfg.*, 30 Fed. Cas.(N.D. Ill. 1879), were rendered prior to the Federal Circuit's opinion in

*Clontech Labs.* The third, *FMC Corp. V. Control Solutions Inc*, 369 F.Supp.2d 539 (E.D. Pa.

2005), is also unpersuasive as it is inconsistent with *Clontech's* definition of an unpatented

article.

It is evident from the language of the statute and the recent interpretations by the Federal

Circuit and numerous district courts that an "unpatented article" includes products marked with

expired patents. As such, EdgeCraft 's motion to dismiss should be denied.[6]

**D.      In the event the Relator's Complaint is dismissed, it should be without prejudice.**

As stated herein, EdgeCraft 's Motion to Dismiss should be denied. However, should the

complaint be dismissed, it should be done without prejudice.

Federal Rule of Civil Procedure 15(a) clearly states that "leave should be freely given

when justice so requires." EdgeCraft argues that amendment would be futile. (Mem. at 11-13.)

EdgeCraft is wrong. Although the Relator strongly contends he has met his pleading obligations,

greater detail can be provided if the Court believes it is necessary. [7]

---

[6]EdgeCraft argues that in 1860 Congress refused an amendment to the false marking
statute that "arguably" would have made the statute apply to expired patents. This point is
without merit because the language of Section 292 is unambiguous and clearly covers the false
marking of "any unpatented article". Thus, there is no need to consult the statute's legislative
history. *See Connecticut Nat'l Bank v. Germain*, 503 US 249, 254 (1992)(rejecting consideration
of legislative history because statutory language was unambiguous). Morever, EdgeCraft's
argument is based purely on speculation. The 1860 bill would have made many changes to the
Patent Act and it is impossible to know why Congress rejected it. If the language did have an
impact on the bill not passing, it is likely Congress declined the amendment because the existing
language in the bill - "unpatented" - already covered the false marking of any article "not at the
time secured by a patent".

[7]The case EdgeCraft relies on heavily for support of futility, *General Electric Capital
Corporation v. Lease Resolution Corp.*, is inapposite to the facts here. 128 F.3d 1074 (7th Cir.

14

### III.Conclusion

For the foregoing reasons, EdgeCraft 's motion to dismiss the Relator's complaint pursuant to Rule 12(b)(1), Rule 9(b), and Rule 12(b)(6) should be denied.


By___/s/ John P. Bjork_____


Joseph M. Vanek                         Martin Goering
John P. Bjork                           Jessica E. Rissman
Vanek, Vickers & Masini                 Eugene M. Cummings, P.C.
111 S. Wacker Drive, Suite 4050         One North Wacker Drive, Suite 4130
Chicago, Illinois 60606                 Chicago, Illinois 60606

Bruce S. Sperling
Robert D. Cheifetz
Sperling & Slater, P.C.
55 W. Monroe, Suite 3200
Chicago, Illinois 60603
(312) 641-3200

---

1997). There, the complaint was dismissed with prejudice because the plaintiff had failed to remedy the deficiencies in its complaint after being given multiple opportunities to do so. *Id.* at 1085.

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2010 , I provided service upon all counsel of record via the District Court of the Northern District of Illinois' CM/ECF System which will send notification of this filing to the registered attorneys of record.


/s/ John P. Bjork
John P. Bjork