IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| THOMAS A. SIMONIAN, | ] |
| Relator, | ] 1:10-cv-01263 |
| v. | ] |
| | ] Hon. John F. Grady |
| EDGECRAFT CORP. | ] |
| | ] **Jury Demand** |
| Defendant. | ] |

### Relator's Response in Opposition to EdgeCraft's Motion to Stay

Thomas A. Simonian, as *qui tam* relator on behalf of the United States of America ("Relator"), respectfully submits this Response to the motion to stay filed by EdgeCraft Corp., ("EdgeCraft"). EdgeCraft, which does not and cannot deny that it has mis-marked its products with expired patents as set forth in Relator's Complaint, argues that the Complaint should be stayed while awaiting the results of appeals in two cases pending in the Federal Circuit.

The Relator respectfully submits that EdgeCraft's motion should be denied. EdgeCraft cannot show that there is any likelihood that the case will substantially change current Federal Circuit law applicable to this case. *See Zojo Solutions, Inc. v. The Stanley Works*, 2010WL1912650, *1-2 (N.D. Ill. 2010).[1] The law is clear that private citizens, such as the Relator, have standing to sue under the false marking statute. Further, the Federal Circuit has defined "unpatented article" to expressly include products marked with expired patents.

Additionally, to grant a stay in this matter would prejudice the Relator and would harm the general public in that: (a) EdgeCraft will continue to provide false information to the public and; (b) private citizens will continue to bear the costs of determining whether companies, such

---

[1] All unpublished cases are attached as **Group Exhibit 1** hereto.

as EdgeCraft, actually control the intellectual property embodied in the products marked with patent numbers. This harm was articulated by the Federal Circuit and would be prolonged by a stay of this litigation. *The Forest Group, Inc. v. Bon Tool Company*, 590 F.3d 1295, 1304 (Fed. Cir. 2009); *Clontech Labs v. Invitrogen Corp.*, 406 F.3d 1347, 1356-57 (Fed. Cir. 2005).

Given this prejudice, and because EdgeCraft is unable to show that a change in the law is likely, the motion for a stay should be denied.

## Argument: EdgeCraft's Motion for a Stay Should Be Denied

As detailed in the Relator's response to EdgeCraft's Motion to Dismiss, the Federal Circuit's recent guidepost decisions in this area strongly support the Relator's claims. With respect to what constitutes an "unpatented article," the court in *Clontech Labs* held that, "[when] the statute refers to an 'unpatented article' the statute means that the article in question is not covered by at least one claim of each patent with which the article is marked." *Id.* at 1352. Accordingly, if a patent is marked with multiple patent numbers, each and every patent marked on that article must be valid (*e.g.*, not expired) and must have at least one claim that covers the article. *Clontech Labs*, 406 F.3d at 1352, 1356-57; *Zojo Solutions, Inc. v. The Stanley Works*, 2010WL1912650, *2.

In regards to injury, the *Clontech Labs* court made clear that false marking harms the public interest because, *inter alia*, it forces the public to expend resources it should not have to. The court stated that:

> false marking misleads the public into believing that a patentee controls the article in question (as well as like articles), externalizes the risk of error in the determination, placing it on the public rather than the manufacturer or seller of the article, and increases the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in an article.

2

*Clontech Labs*, 406 F.3d at 1356-57.

The law is also settled with respect to standing for private citizens. The United States has standing to pursue a claim against a company that abuses the patent rights the United States granted to it. By extension, the Relator has standing because the United States has partially assigned to private citizens its right to seek a civil fine for the harm caused by companies that falsely mark their products. *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000); *The Forest Group*, 590 F.3d at 1303; *Clontech Labs*, 406 F.3d at 1356-7 (explaining that the public is injured when it must expend search costs to determine the status of intellectual property); *Pequinot v. Solo Cup Co.*, 640 F.Supp.2d 714, 720-1 (E.D.Va. 2009) (finding standing for the 292 relator). Indeed, during briefing in *The Forest Group*, the appellee raised the issue of a *qui tam* relator's standing to bring a claim in the absence of a direct personal injury:

> A rule that a *qui tam* plaintiff is entitled to recover a per article penalty of up to $500 could make Section 292 a potential windfall for enterprising patent attorneys and would-be litigants. The statute permits "any person" to sue ... Because there is no standing requirement, a *qui tam* plaintiff can sue for false marking even if he did not suffer a competitive disadvantage and even if he was not a consumer of the falsely marked article.

(Appellee's Brief in *The Forest Group*, 2009 WL 870156 (Fed. Cir. 2009), p. 13; **Exhibit A** hereto). The Federal Circuit had two possible responses to this argument: (a) it could have stated that such a plaintiff would not have standing, and thus there was no need to fear claims from "enterprising litigants;" or (b) it could have stated that the statute in fact encouraged enterprising litigants to bring such claims despite the absence of direct injury. The Federal Circuit emphatically chose the latter course. As Judge Shadur opined recently:

3

> *Forest Group* has confronted – and [has] rejected – the notion that private plaintiffs such as Zojo here were not intended to be granted authority to bring this type of action * * * [I]f the Federal Circuit had perceived that the statute posed a subject matter jurisdictional problem, it would have been obligated to raise and address that issue *sua sponte.*

*Zojo Solutions, Inc. v. The Stanley Works*, 2010 WL 1912650, *1-2.

Given the current state of the law, it is no surprise that EdgeCraft perceives some tactical advantage in delaying this case in the hope that the Federal Circuit might say something that would help defendant. It should also be no surprise that the Relator objects to this tactical ploy and to the ensuing delay, during which time EdgeCraft will continue to falsely mark its products, causing further injury to the public. A hoped-for-change in the law is not a basis for a stay, and as such, EdgeCraft's motion should be denied.

### A. Applicable Legal Standard

"'The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Se-Kure Controls, Inc. v. Sennco Solutions, Inc.*, 675 F.Supp.2d 877, 878 (N.D.Ill. 2009), quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936).

"In deciding whether a stay is appropriate, courts consider the following factors: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *Se-Kure Controls*, 675 F.Supp.2d at 879 (denying a stay as to two of the three patents at issue in the litigation; granting stay regarding the same patent that was at issue on appeal before the Federal Circuit).

None of the three factors considered on a motion to stay weighs in favor of granting a stay

4

under the facts here.

### B. Undue Prejudice and Tactical Disadvantage

As set forth above, the current state of false-marking law in the Federal Circuit is very much supportive of *qui tam* claims brought by individuals like the Relator. Indeed, in *The Forest Group*, the Federal Circuit stated that its interpretation of "per offense" as "per article marked" was supported by Congress' articulated desire to motivate citizens with a reward large enough that they would pursue claims against false markers on the government's behalf. 590 F.3d at 1304. Dissatisfied with the current state of the law, EdgeCraft seeks a stay in the hopes of getting one or two tactical advantages: (a) to delay the case while EdgeCraft's practice of false marking continues; or (b) to delay the case in the hope that the Federal Circuit or, ultimately, the United States Supreme Court, changes current law enough to reduce EdgeCraft's exposure in this case. As stated, a hoped-for-change in the law is not a basis for a stay, but even if it was EdgeCraft cannot demonstrate that its tactical delaying maneuver will not work to the Relator's disadvantage.

But the "tactical disadvantage issue" is almost beside the point. The key here is the prejudice to the public of allowing EdgeCraft to delay this case while its false marking continues. As the Federal Circuit made clear, Congress determined that the public should not have to spend the search costs to determine whether a patent is valid and enforceable:

> Congress intended the public to rely on marking as "a ready means of discerning the status of intellectual property embodied in an article of manufacture or design." *Bonito Boats*, 489 U.S. at 162, 109 S.Ct. 971.

*Clontech Labs*, 406 F.3d at 1356. Thus, false marking harms the public interest because it:

> misleads the public into believing that a patentee controls the article in question (as

5

> well as like articles), externalizes the risk of error in the determination, placing it on the public rather than the manufacturer or seller of the article, and increases the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in an article.

*Id.* at 1356-7. EdgeCraft ignores this entirely, arguing that there is no prejudice from the delay because the Relator himself suffers no injury. (EdgeCraft Mem. at 5-6). But the Relator brings this claim on behalf of the United States, to redress wrongs to the public and to do so as expeditiously as possible.

The real estate on the packaging of EdgeCraft's accused products is limited and thus valuable. Every word or number is placed on the products for a reason - to persuade the consumer to purchase the product over a competitor's product. EdgeCraft's continued marking of its products after the applicable patents had expired was done to bolster the marketing message that EdgeCraft's products posses certain unique features, when in fact, they no longer do. Until EdgeCraft's false marking is stopped, the public will continue to have to shoulder expenses to confirm the status of alleged intellectual property.

Given the presence of this continued injury during the period of delay, and EdgeCraft's inability to contradict it, two things are readily apparent: (a) this prejudice to the public weighs against a stay (*Se-Kure Controls*, 675 F.Supp.2d at 879) and (b) because this stay will harm the public, EdgeCraft must make a very significant showing of "hardship" or "inequity" to warrant a stay. *Id.*, 675 F.Supp.2d at 878-9, quoting *Landis*, 299 U.S. at 255 ("'If there is even a fair possibility that the stay will work damage to someone else,' the party seeking the stay 'must make out a clear case of hardship or inequity in being required to go forward.'"). As shown below, EdgeCraft has failed to demonstrate a clear case of hardship or inequity from proceeding

to litigate this case.

### C. A Stay Will Neither Simplify Issues and in This Case Nor Will it Reduce the Burden of Litigation on the Parties and Court.

EdgeCraft has not clearly demonstrated that awaiting a ruling from the Federal Circuit in *Stauffer* or *Pequinot* will so affect this case as to make it worth the delay to await that decisions. In this regard, EdgeCraft hopes that *Stauffer* and *Pequinot* will materially affect the Relator's standing to sue in this *qui tam* action or that one of the decisions will redefine what constitutes an "unpatented article". As shown below, these questions have been answered. Therefore, answers to the contrary by the Federal Circuit now would (i) be surprising given current law and (ii) lead to a petition for rehearing *en banc* and a writ of *certiorari*. In other words, under a best case scenario for EdgeCraft, a stay would need to remain in place for a great deal longer than it suggests.

#### 1. Given the Federal Circuit's strong support for *qui tam* Relator lawsuits in *The Forest Group*, and the United States' strongly supportive brief in *Stauffer*, it is not likely that the Federal Circuit will change the current state of the law with respect to standing.

The Relator is suing on behalf of the United States, as the statute specifically provides. 35 U.S.C. §292; *see, Vermont Agency of Natural Resources*, 529 U.S.at 768, fn. 1 (identifying Section 292 as one of the few approved *qui tam* statutes). As the Federal Circuit recently held, the incentive-based system set forth in the statute was placed there so that people like the Relator would pursue false-marking claims on behalf of the United States. *The Forest Group*, 590 F.3d at 1303-4 ("...the false marking statute explicitly permits *qui tam* actions. By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking"); *Juniper Networks*, 2010 WL 986809, *6 (N.D. Cal. March 17, 2010) ("in *qui*

7

*tam* actions, the injury need not be suffered by the relator; injury in fact to the United States is sufficient;" relator had standing to bring 292 claim).

The Relator therefore derives his standing from the United States government. *Clontech Labs*, 406 F.3d at 1356-57, fn. 6; *The Forest Group*, 590 F.3d at 1303 (same, citing the *Clontech Labs* footnote); *Pequinot v. Solo Cup Co.*, 640 F.Supp.2d 714, 720-1 (E.D.Va. 2009) (finding standing for the 292 relator); *Harrington v. Ciba Vision Corporation*, 08 C 251, Tr. at 5-6, 116-122 (W.D.N.C. May 22, 2009) (finding standing for the *Section* 292 relator after considering the *Stauffer* opinion) (**Exhibit B** hereto). As stated earlier, during briefing in *The Forest Group*, the appellee raised the issue of whether *qui tam* relator has standing to bring a claim in the absence of a direct personal injury. The *Forest Group* court answered that question in the affirmative.

The question is thus whether in *Stauffer* – which has yet to be set for oral argument – the Federal Circuit is likely to change the standing law. EdgeCraft cannot demonstrate that awaiting a ruling in *Stauffer* will be worth the wait here given: (a) the current state of the law as set forth in *Clontech Labs* and *The Forest Group*; (b) the position of the United States itself in support of that current state of the law and against the opinion in *Stauffer* (U.S. Brief, **Exhibit C** hereto); (c) the fact that *Stauffer* was decided prior to the Federal Circuit's opinion in *The Forest Group*; (d) the fact that the *Stauffer* court (615 F.Supp.2d at 255) found a lack of standing based on a factual challenge (the affidavits and exhibits demonstrated that Brooks Brothers had no intent to deceive) and not on a facial challenge to standing;[2] and (e) the fact that Mr. Stauffer insulted the

---

[2] As a general matter, a defendant can make two types of challenges to standing. Either a defendant can assert that, facially, the plaintiff has not sufficiently pled standing, or a defendant can submit evidence that calls into question the accuracy of the plaintiff's facially-sound standing allegations. *Apex Digital, Inc. v. Sears, Roebuck & Company*, 572 F.3d 440, 443 (7th Cir. 2009) (explaining "the critical difference between facial and factual challenges to jurisdiction"). Here,

8

court's intelligence by arguing that he was "injured" by the mis-marking because he "found himself questioning his own professional competence, inasmuch as he was sure that Brooks Brothers could not have committed such a brazen section 292 violation." 615 F.Supp.2d at 255 fn. 7.

### 2. The Federal Circuit's clear definition of an "unpatented article" is not likely to be changed by the decision in *Pequinot*.

The Federal Circuit has already defined what an "unpatented article" means in the context of the false marking statute. According to the Federal Circuit, Section 292 requires that the article in question must be "**covered by** at least one claim **of each patent** with which the article is marked." *Clontech Labs*, 406 F.3d at 1352 (emphasis added). When a patent expires, its claims no longer cover anything, including the marked article. As a result, marking a product with an expired patent violates Section 292.

As discussed in the Relator's Opposition to the Motion to Dismiss, Judge Shadur recently followed Federal Circuit precedent and rejected the argument that a Section 292 violation may not be based on an expired patent. In *Zojo Solutions, Inc. v. The Stanley Works*, 2010 WL 1912650, *1-2 (N.D. Ill. May 12, 2010), Judge Shadur quoted extensively from *The Forest Group* and concluded that "the perceived evils [of false marking set out by the Federal Circuit in *The Forest Group*] are present when a patentee continues to affix the 'patent' designation to an article even after it has entered the public domain by reason of the patent's expiration." Other courts have reached the same conclusion. *Brinkmeier v. Graco Children's Products, Inc.*, 2010 WL 545896, *3 (D. Del. February 16, 2010; cited by defendant) ("Under *Clontech*, it appears that a product

---

EdgeCraft has not made a factual challenge to standing.

9

marked with expired patents and valid patents would be an unpatented article for purposes of §292"); *Pequignot v. Solo Cup*, 540 F.Supp.2d 649, 652 (E.D.Va. 2008) ("An article that was once protected by a now-expired patent is no different than an article that has never received protection from a patent. Both are in the public domain"); *DP Wagner Manufacturing, Inc. v. Pro Patch Systems, Inc.*, 434 F.Supp.2d 445, 452, fn. 3 (S.D. Tex. 2006) ("It is self evident that once a patent has expired it provides no protection for the article that it described").

Given the Federal Circuit's clear definition of "unpatented article", it is unlikely that a material change in the law will result from the decision in *Pequinot*. As such, there is no reason to wait for the *Pequinot* opinion before proceeding with this case.

### 3. EdgeCraft's Cited Authority Does Not Require A Stay.

There is no question that this Court has the power to control its docket and stay this case if the Court so desires. EdgeCraft's cases demonstrate a variety of circumstances where courts have stayed cases in their discretionary control of their own dockets. *See e.g., San Francisco Tech. v. Adobe Systems, Inc.* (stayed because the plaintiff could not think of a good reason not to do so); *Heathcote Holdings v. Crayola* (stayed by agreement); *Public Patent Foundation v. GlaxoSmithkline* (Public Patent Foundation has a policy of staying cases in light of *Stauffer* appeal); *See* Civil Docket Reports for *Public Patent Foundation v. GlaxoSmithkline Consumer Healthcare; Public Patent Foundation v. McNeil PPC*, **Exhibit D** hereto.

The true question here is whether EdgeCraft has carried its burden of showing that this Court should stay this case under the circumstances. Given the unlikelihood that the law will materially change and the prejudice to the public of allowing EdgeCraft to delay this case while its

false marking continues, the Relator respectfully submits that the answer to that question is no.

## Conclusion

For the foregoing reasons, the Relator respectfully submits that EdgeCraft's motion to stay this case pending the Federal Circuit's ruling in *Stauffer* and *Pequinot* should be denied.

Respectfully submitted,


By: /s/ John P. Bjork


| | | |
|---|---|---|
| Joseph M. Vanek | Bruce S. Sperling | Martin Goering |
| John P. Bjork | Robert D. Cheifetz | Jessica E. Rissman |
| Vanek, Vickers & Masini | Sperling & Slater, P.C. | Eugene M Cummings PC |
| 111 S. Wacker Drive, Suite 4050 | 55 W. Monroe, Suite 3200 | One North Wacker Drive |
| Chicago, Illinois 60606 | Chicago, Illinois 60603 | Chicago, IL 60060 |

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2010 , I provided service upon all counsel of record via the District Court of the Northern District of Illinois' CM/ECF System which will send notification of this filing to the registered attorneys of record.

/s/ John P. Bjork
John P. Bjork